ORIGINAL

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

SEP 0 2 2016

~~LAWRENCE~~ K. BAERMAN, CLERK
ALBANY

Ben Gary Triestman,

       **Petitioner,**

           Civil Case No. 1:16-cv-1079
              (LEK/DEP)

-vs-

Eric Schneiderman - Attorney General,
The State of New York,

       **Respondent.**

---

# Petition for a Writ of Habeas Corpus

Introduction and Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1 of 24

I. Significant Restraint on Liberty by the State – the "in custody" criterion . . . . . . . . Page 2 of 24

II(a). Exhaustion of Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 6 of 24
   II(b) - Alternate Jurisdiction, Supplemental to Exhaustion of Remedies . . . . Page 6 of 24
   II(c) - The Temporary Orders of Protection (TOOP)
     are Indistinguishable from a Final Order of Protection,
     for Constitutional analysis purposes . . . . . . . . . . . . . . . . . . . . . . . . . . Page 8 of 24

III. Preservation of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 10 of 24

IV. Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 10 of 24

V. Memorandum of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 13 of 24
   The order of protection statute is unconstitutional . . . . . . . . . . . . . . . . . . . . Page 13 of 24
   Prohibiting the Right to Appeal Temporary Orders of Protection (TOOP)
     is Unconstitutional . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 14 of 24
   No findings were made to support the issuance of the TOOP, as required by statute(s),
     and thus the TOOP was issued in violation of procedural due process.
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 15 of 24
   No facts existed to support the issuance of the TOOP . . . . . . . . . . . . . . . . . Page 17 of 24

VI. Federal claims of Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 19 of 24

Substantive Rights Violated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 21 of 24
The Order Effectively Imposes a Termination of Parental Rights . . . . . . . . Page 22 of 24

VII. Summation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 23 of 24

Relief sought . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 24 of 24

## TABLE OF AUTHORITIES

### CASES

Arlen v. Laird, 451 F.2d 684 (2nd Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B.S. v. Somerset County, 704 F.3d 250 (3d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Barry v. Bergen County Probation Department, 128 F.3d 152 (3d Cir. 1997) . . . . . . . . . . . . . 4

Dow v. Circuit Court, 995 F.2d 922 (9th Cir) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Henley v. Municipal Court, 411 U.S. 345 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8

Jones v. Cunningham, 371 U.S. 236 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Justices of Boston Municipal Court v. Lydon, 466 U.S. 294 (1984). . . . . . . . . . . . . . . . . . . . . 4

Lawrence v. 48th District Court, 560 F.3d 475 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 4

Meyer v. Nebraska, 262 U.S. 390 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Peck v. United States, 73 F.3d 1220 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pierce v. Society of Sisters, 268 U.S. 510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Reno v. Flores, 507 U.S. 292. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rosen Trust v. Rosen, 53 A.D.2d 342 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Santosky v. Kramer, 455, U.S. 745 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Scania v. US, 37 F. 3d (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Southerland v. City of New York, 652 F.3d 209 (2d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . 20

Trowel v. Granville 530 U.S. 57 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States ex rel. Scranton v. State of NY, 532 F. 2d (2nd Cir. 1976). . . . . . . . . . . . . . . . . . .  4

Washington v. Glucksberg, 521 U.S. 702 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## STATUTES

18 U.S.C. §2265, §2266. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

28 U.S.C. §1367(a), §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §2241, §2254. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §2254(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. §2254(b)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9

Article 5, NY CPLR §506 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CPLR §4213(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Cal. Penal Code §§ 1318.4 (a), 1318.4 (c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

FCA §1112(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

NY CPLR §4213 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

NY CPLR §4213(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

NY FCA Article 6, §154 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

NY Penal Law §215.50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

New York Family Court Act §154-c(3)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

New York Family Court Act Article 6 §154 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Ben Gary Triestman,

                  Petitioner,

-vs-

Eric Schneiderman - Attorney General,
The State of New York,

                  Respondent.

Civil Case No. 1:16-cv-1079 (LEK/DEP)

**Petition for a Writ of Habeas Corpus**

## Introduction and Jurisdictional Statement

This is a petition for a writ of habeas corpus, as is provided for in Article I, §9 of the U.S. Constitution, and through statutory provisions pursuant to 28 U.S.C. §2241, §2254, and the concurrent writ of mandamus authority vested in this court.

Additional subject matter and other jurisdiction is invoked pursuant to 28 U.S.C. §1367(a), §1331 and 18 U.S.C. §2265, §2266, as they directly confer federal jurisdiction upon this petition.

This petition seeks to address a restraining order issued by the Ulster County Family Court, a New York State Court, which has been issued in violation of federal Constitutional guarantees of due process, results in unconstitutional constraints on Petitioner's liberties and freedoms, and subjects Petitioner to ongoing exposure of criminal prosecution and imprisonment, currently and in the future. See **Exhibit A**, which is a compilation of 5 overlapping identically termed restraining orders issued and reissued from January 22, 2014 to May 13, 2016, and

effective until April 11, 2018. The order is a no-contact, full stay-away order, against Petitioner as to his daughter, except for highly restricted and infrequent supervised/therapeutic visits.

The order(s) and terms therein are all identical except for their dates of issuance and expiration; due to the overlapping and continuing nature of the orders, they effectively and substantively form one continuous restraining order, as they are based upon the very same originating petition hearing, arguments, facts, and have the same terms of restraint[1].

The following pre-requisite jurisdictional elements for this habeas action have been satisfied, allowing this court to entertain the petition on the merits; these prerequisites are detailed hereon, infra:

### I. Significant Restraint on Liberty by the State – the "in custody" criterion

The conditions and consequences of the restraining order(s) continually subject Petitioner to a risk of incarceration, criminal prosecution, fines, license revocations, and other sanctions. The orders have been, and are effective continually from January 22, 2015 until April 11, 2018.

The order significantly constrains his physical liberty to travel, attend public institutions, commercial establishments generally open to the public, and curtails

---

[1]The first three orders of protection were termed "temporary", all overlapping in expiration and reissuance dates; the two most recent ones, issued April 20, 2016 and May 13, 2016, were termed simply "order of protection", see **Exhibit A**.

his ability to come and go as he may need in the community, incurs various civil disabilities, and always at risk of being arrested, see NY Penal Law §215.50, et.seq.; the order also invokes federal law jurisdiction pursuant to 18 U.S.C. §2265, §2266 and the criminal liabilities aspect of its "in custody" restraint applies across state lines.

Petitioner is additionally forced in ad hoc fashion to leave locations in the event that his daughter becomes present there, and with no advance notice to prohibition of any of these geographical locations. He has had to resign from his PTA board position at his daughter's school, due to the risk of her presence there, and is excluded from all activities there, as well as his sheer proximity to the school.

More specifically, any advertent or inadvertent contact or communication Petitioner may have with his daughter, immediately subjects him to arrest, criminal charges and prosecution; this includes phone calls, emails, blog postings, postal letters, alleged third party communications, even something as innocent as a wave to her in the street.

As interpreted in case law from the US Supreme Court and by the 2nd Circuit Court of Appeals, such constraint constitutes the legal definition of "in custody" for habeas corpus purposes.

The "custody" requirement is satisfied so long as the person is "subject to restraints not 'shared by the public generally.'", see *Hensley v. Municipal Court*,

411 U.S. 345, 351 (1973) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)).

The courts have found the "in custody" element to be satisfied when the petitioner(s) were on bail, on parole (*Jones v. Cunningham*, 371 U.S. 236, 240 (1963)), on supervised release (*Peck v. United States*, 73 F.3d 1220, 1224 n. 5 (2d Cir.1995)) and probation (*Scanio v. US*, 37 F. 3d 858, 860 (2nd Cir. 1994)), pending trial or appeal and released on personal recognizance (*Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294 (1984) & Hensley v. Municipal Court, 411 U.S. 345, 351-53 (1973)), on aliens seeking to enter the United States not otherwise detained (*Brownell v. Tom We Shung*, 352 US 180 (1956)), Army Reserve officers not on active duty (*Strait v. Laird*, 406 US 341 (1972)), conscientious objectors (*Arlen v. Laird*, 451 F.2d 684 (2nd Cir. 1971)), court ordered attendance at alcohol rehabilitation classes (*Dow v. Circuit Court*, 995 F.2d 922 (9th Cir)), on indictment before trial without bail *(United States ex rel. Scranton v. State of NY*, 532 F. 2d 292, 294 (2nd Cir. 1976), persons ordered to perform community service *(Lawrence v. 48th Dist. Court*, 560 F.3d 475, 480-481 (6th Cir. 2009), see also *Barry v. Bergen County Prob. Dep't*, 128 F.3d 152, 161 (3d Cir. 1997)).

The constraints suffered by Petitioner in this action are at least as onerous as the petitioners in the above cases held to be "in custody" for habeas corpus purposes, and actually are more restrictive than them.

As the Supreme Court held in *Hensley v. Municipal Court*, 411 US 345, 350-351 (1973):

> "Our recent decisions have reasoned from the premise that habeas corpus is not "a static, narrow, formalistic remedy," *Jones v. Cunningham*, supra, at 243, but one which must retain the "ability to cut through barriers of form and procedural mazes." *Harris v. Nelson*, 394 U. S. 286, 291 (1969). See *Frank v. Mangum*, 237 U. S. 309, 346 (1915) (Holmes, J., dissenting). "The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." *Harris v. Nelson*, supra, at 291.
>
> . . . . .
>
> The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty. Since habeas corpus is an extraordinary remedy whose operation is to a large extent uninhibited by traditional rules of finality and federalism, its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate. Applying that principle, we can only conclude that petitioner is in custody for purposes of the habeas corpus statute. First, he is subject to restraints "not shared by the public generally," *Jones v. Cunningham*, supra, at 240: that is, the obligation to appear "at all times and places as ordered" by "[a]ny court or magistrate of competent jurisdiction." Cal. Penal Code §§ 1318.4 (a), 1318.4 (c). He cannot come and go as he pleases. His freedom of movement rests in the hands of state judicial officers, who may demand his presence at any time and without a moment's notice. Disobedience is itself a criminal offense. The restraint on his liberty is surely no less severe than the conditions imposed on the unattached reserve officer whom we held to be "in custody" in *Strait v. Laird*, supra."

The conditions imposed upon the Petitioner in this case, pursuant to the current restraining order, meet the conditions of being "in custody" for purposes of this habeas corpus action.

## II(a). Exhaustion of Remedies

Upon issuance of the first order of protection, January 22, 2015 (**Exhibit A p1**), Petitioner timely filed a notice of appeal to the Appellate Division, 3rd Dept, NY Supreme Court, see **Exhibit B**.

The Appellate Division denied the appeal on April 7, 2016, see **Exhibit C**, declining to entertain the appeal on the merits because the order on appeal was a temporary order.

Petitioner then timely filed a notice of appeal, and motion for leave to appeal to the NY Court of Appeals on May 4, 2016, see **Exhibit D**.

On June 30, 2016, the NY Court of Appeals denied leave to appeal, see **Exhibit E**.

### II(b) - Alternate Jurisdiction, Supplemental to Exhaustion of Remedies

Notwithstanding the Petitioner's above presented exhaustion of remedies, 28 U.S.C. §2254(b)(1)(B) provides for alternate jurisdictional satisfaction to the Exhaustion of Remedies normally required in §2254(b)(1)(A), and which also applies to this petition.

The statute provides that in the event that exhaustion of remedies are stymied or fundamentally prevented due to "an absence of State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant", the court should issue the writ without exhaustion of remedies.

Both the intermediate appellate court, and the NY Court of appeals denied the appeal based upon the order(s) of protection being a non-final order, and would not even reach the merits of the appeal, preemptively stating that as a matter of law no "temporary" order of protection is reviewable on appeal, see **Exhibits C & E**.

Such a ruling essentially closes off all avenue for an exhaustion of remedies or a review on the merits, thus rendering the exhaustion requirement futile and barred for this habeas claim –

see *O'sullivan v. Boerckel*, 526 US 838, 847 (1999) (In this regard, we note that nothing in our decision today requires the exhaustion of any specific state remedy when a State has provided that that remedy is unavailable.), *Rose v. Lundy*, 455 US 509, note 7 (1982) (the exhaustion doctrine does not bar relief where the state remedies are inadequate or fail to "afford a full and fair adjudication of the federal contentions raised.", citing *Ex parte Hawk*, 321 US 114, 118 (1944))

Where exhaustion of remedies is barred or ineffective, §2254(b)(1)(B) properly applies.

## II(c) - The Temporary Orders of Protection (TOOP)
### are Indistinguishable from a Final Order of Protection,
### for Constitutional analysis purposes

Despite the designation of "temporary" by the family court, the 5 intrinsically bound order(s) of protection it issued were not temporary, as it was reissued repeatedly, and in aggregate was identical to a final order in its effect, scope and duration.

The fact is, for liberty interest constitutional purposes, a "temporary" order of protection is as complete and final in its effect as is any "final" order of protection, whether it is entitled "temporary" or not, and the effect is the same.

As the Supreme Court recognized in *Hensley v. Municipal Court*, at 350, a habeas petition must retain the "ability to cut through barriers of form and procedural mazes. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected."

During the pendency of the state appeal for the subject restraining order, the family court reissued the order of protection four additional times, each overlapping the expiration date of the previous order, see **Exhibit A**.

Each of the reissued orders were identical to the original order of protection issued on January 22, 2015, they were explicitly premised upon the same hearing; no new facts, arguments or hearings were held or entertained, and the reissued orders were all *nunc pro tunc*.

It took one year and three months for the intermediate appellate court to issue a decision on the appeal, then denying it as a matter unappealable by law[2]. All that time, the "temporary" orders of protection were in effect, denying Petitioner access to his daughter, limiting his civil liberties, and continually exposing him to criminal prosecution.

In aggregate this ongoing order results in a denial of Petitioner's liberty and other core Constitutional rights for over three years, going on into the future until April 11, 2018 – circumstances that deserve strict scrutiny review, not a capitulation to form over actuality.

In summation on exhaustion of remedies:

1. The exhaustion of state remedies has been satisfied, the claim having been denied by the highest court of the state,

2. The state courts have held that Petitioner's claim, and all claims of its type, are barred from review as a matter of law,

3. The time it takes to appeal this issue takes longer than the duration of any one of the consecutively re-issued restraining orders, making it impossible to review due to the diverging nature of the order(s), thus satisfying the §2254(b)(1)(B) prong as rendering such attempts completely ineffective.

---

[2]During the pendency of the appeal, Petitioner moved for a stay of the order in the appellate court, but was denied. Petitioner also moved to join subsequent notice of appeal for the reissued order(s) of protection to the existing appeal, but was also denied.
Petitioner had also applied to the appellate courts under the aegis of mandamus, Article 5, NY CPLR §506 and alternately Article 78 et.seq., which provided an independent source of jurisdiction, but the appellate courts denied the action on that also without reference or comment of the mandamus venue.

Petitioner has exhausted his state remedies to the extent that is possible, and has preserved all issues therein for this petition.

### III. Preservation of Issues

All of the issues submitted for review in this petition have been previously and explicitly submitted to both the intermediate appellate court (Appellate Division, 3rd Dept. of NY Supreme Court) and to the NY Court of Appeals, see **Exhibit J**, appellate briefs and motion for leave to appeal to NY Court of Appeals.

### IV. Statement of Facts

Petitioner Ben Gary Triestman is the father of their child A.T., and Suzanne Mary Cayley is the mother of their child A.T., DOB 12/20/2003.

On July 31, 2013, a custody trial commenced pursuant to NY Family Court Act Article 6.

No temporary custody order was issued, and both parents had equal custody.

Neither parent has any history of domestic violence, or findings of abuse, neglect, family offenses or contempts of court, both are fit parents.

The child was residing with the mother in Woodstock NY, and Petitioner was also living in Woodstock NY, about four miles away from each other. (The residences are currently the same as of the filing of this petition.)

The mother refused to allow the child to have visitation with the father.

During the pendency of the trial, Petitioner moved the family court for a visitation order, and on January 14, 2014, the court issued a visitation order for

therapeutic visits, that directed the mother to produce the child for these visits, see

**Exhibit F.**

Although the mother moved for temporary custody numerous[3] times during

the pendency of the trial, the judge denied them and maintained that shared

custody between the parents should continue.

Prior to the January 22, 2015, protection order hearing, the judge

acknowledged[4] that there were no orders in place that otherwise denied Petitioner

access to his child.

On December 12, 2014, Petitioner had a visit with his child, and at that visit,

she conveyed to him she wished to have a particular birthday gift, her birthday

taking place on December 20th.

Subsequently Petitioner purchased the gift, and on December 19th, 2014,

arrived at his daughter's school at the end of the school day to give his daughter

the gift.

However before he was even able to see his daughter, the mother had picked

up the child and taken her from the school.

On December 23, 2014, the mother filed a petition for temporary custody and

for the order of protection that is the subject of this habeas petition, see **Exhibit G,**

mother's petition in family court.

---

[3]On Oct 21, 2013, Sep 15, 2014, and Jan 22, 2015.

[4]On Oct 21, 2013, Sep 15, 2014.

The mother claimed that Petitioner's attempt to give his child the birthday gift, violated the visitation order, asserting that the order (**Exhibit F**) by omission denied all other contact by Petitioner.

Petitioner had full shared custody at that time, and there were no protection orders in effect prohibiting him from having contact with his child, see Petitioner's affidavit filed in opposition to mother's petition for the subject restraining order, **Exhibit H**.

On January 22, 2015, a hearing was held in family court to address the mother's petition,  see **Exhibit I**, transcripts of restraining order hearing, and the family court issued the subject restraining order, see **Exhibit A**, pages 1-2.

The order was a full stay-away order, and a no-communication order by any means, except for therapeutic visitation.

At the end of the hearing, Petitioner requested judicial findings of fact and law from the family court judge as to the basis of the issuance of the restraining order, and the judge refused to provide any findings or legal reason for the issuance, stating on the record that he was "Not going to do that.", see **Exhibit I**, page 13, line 4 et.seq.

The January 22, 2015 order of protection had an expiration date of September 30, 2015.

On August 17, 2015, the order of protection was reissued, with an expiration date of March 31, 2016, **Exhibit A**, pages 3-4.

On February 1, 2016, the custody trial ended.

On February 1, 2016, the order of protection was reissued, with an expiration date of July 1, 2016, **Exhibit A**, pages 5-6.

On April 11, 2016, a custody decision was issued.

On April 20, 2016, the order of protection was reissued, with an expiration date of April 11, 2018, with the designation of "temporary" removed, **Exhibit A**, pages 7-8.

On May 13, 2016, the order of protection was reissued, with again with an expiration date of April 11, 2018 and the designation of "temporary" removed, **Exhibit A**, pages 9-10.

### V. Memorandum of Law
### Legal Argument, and Claims for Habeas Corpus Relief

### Claim #1
### The order of protection statute is unconstitutional

The New York Family Court Act Article 6 §154, which provides for issuance of orders of protection in relation to Article 6 (visitation and custody) proceedings, is unconstitutionally vague, and gives no notice as to any articulable standards of conduct or instances of prohibited conduct, or other action(s) that would trigger an issuance of an order of protection.

Page 13 of 24

## Claim #2
## Prohibiting the Right to Appeal Temporary Orders of Protection (TOOP) is Unconstitutional

The official policy and jurisprudence of the courts of appeal in NY – to blanketly deny the right of appeal for temporary orders of protection – is unconstitutional, because the effects of such orders are identical in effect, scope and even duration given the availability of the lower court to simply reissue them repeatedly on the same grounds.

Such "temporary" orders have the same constitutional impact and implications as do final orders of protection upon the core liberties of a person; the denial of any reliable and timely review for such overarching liberty depriving court orders, is as a matter of law a due process violation.[5]

It is hornbook law that even nominally temporary orders of restraint have the same propensity to irreparably undermine the very proceedings they are supposed to be supplemental to, an occurrence that actually did occur in the custody case herein.

To provide no avenue of timely review, is a due process denial and is unconstitutional.

---

[5]By comparison, it should noted that federal courts provide a right to interlocutory appeal for temporary restraining orders, and the NY Family Court Act provides for interlocutory appeals as of right for temporary restraining orders under Articles 10 (abuse & neglect) FCA §1112(a), "An appeal from an intermediate or final order in a case involving abuse or neglect may be taken as of right to the appellate division of the supreme court."

## Claim #3
**No findings were made to support the issuance of the TOOP, as required by statute(s), and thus the TOOP was issued in violation of procedural due process.**

As a procedural due process matter in this Article 6 proceeding, the court had a mandate to provide factual findings as to the grounds for issuance of this order of protection.

The New York Family Court Act §154-c(3)(ii) states that:

Pleadings and requisite findings.
> No order of protection may direct any party to observe conditions of behavior unless:
> (i)    the party requesting the order of protection has served and filed a petition or counter-claim in accordance with article four, five, six or eight of this act and,
> (ii)   the court has made a finding on the record that such party is entitled to issuance of the order of protection which may result from a judicial finding of fact, judicial acceptance of an admission by the party against whom the order was issued or judicial finding that the party against whom the order is issued has given knowing, intelligent and voluntary consent to its issuance. Nothing herein shall be deemed to limit or restrict the authority of the court to issue a temporary order of protection on an ex parte basis.

In this case there was no such judicial finding of fact, admission or consent, nor was this an ex parte proceeding.

In fact the court made no findings at all – even though requested on the record by Petitioner – the court affirmatively refused to provide any findings, stating "Not going to do that", see **Exhibit I** Line 13, line 13.

Similarly NY CPLR §4213(b) provides that upon a request for findings, it directs that the "decision of the court may be oral or in writing and shall state the facts it deems essential."

The requirement of CPLR §4213(b) is sound and well settled. It is to insure that an intelligent appellate review is possible, by requiring that there must be a sufficient factual basis upon which to pass, see *Matter of I.*, 46 NY 2d 1024, 1025-1026 (NY Court of Appeals 1979):

> We take this occasion, however, to comment upon the findings of fact, or lack thereof, made by the Family Court and affirmed by the Appellate Division, without opinion. A trial court must state in its decision "the facts it deems essential" to its determination. (NY CPLR §4213 [b]) While the court need not set forth evidentiary facts, it must state ultimate facts: that is, those facts upon which the rights and liabilities of the parties depend. (See *Rosen Trust v. Rosen*, 53 A.D.2d 342, 361, aff'd *Trust v. Rosen* 43 N.Y.2d 693; *Fischer v. Fischer*, 45 A.D.2d 917.)
>
> In the present case, the Family Court made no findings of fact, concluding only that it was not persuaded that appellant had proved its case. . . . . Effective appellate review, whatever the case but especially in child visitation, custody or neglect proceedings, requires that appropriate factual findings be made by the trial court — the court best able to measure the credibility of the witnesses. This weighty responsibility cannot be shirked, as in this case, by reference to an ultimate conclusion of the court rather than a statement of its required findings of fact.

For these reasons, the Family Court order of protection should be vacated, as it was issued in lack of procedural due process.

## Claim #4
**No facts existed to support the issuance of the TOOP – it was issued in violation of substantive due process, and in violation of federal parental privilege, as there was full shared custody.**

The family court issued a temporary order of protection preventing all contact except during infrequent and highly restrictive therapeutic visitation sessions – if and when Petitioner could afford it; see the temporary order of protection(s), **Exhibit A**.

Significantly, no family offenses were alleged, no allegations of risk or danger, no violations of pre-existing orders of protection, and no contempt of court orders were shown or found; see the mother's motion, requesting an order of protection and temporary custody at **Exhibit G**.

In fact there were no existing orders of protection or prior findings of abuse or neglect, or even an alleged imminent risk of harm, and Petitioner had full shared custody of his daughter[6].

The only facts before the court were that Petitioner had shown up at his daughter's school at the end of the school day, to give her an 11th birthday gift,

---

[6]Although there was a Temporary Order of Therapeutic Visitation in effect directing the parties to affirmatively provide for therapeutic sessions, see **Exhibit F**, that order made no prohibitions against other contact between the parties and the child, nor was there any other order of protection in effect.
There cannot be an "implied order of protection", as it deprives a person of notice, and it is inherently not appealable since there is no written order to appeal.

see Petitioner 's Affidavit in Response, **Exhibit H**. In fact Petitioner and his daughter did not even see each other that day.

Significantly, the court made no findings of danger, potential danger, harm or imminent harm, or even a best interests analysis – all being the bare minimum elements to support issuance of an order of protection under a preponderance of evidence standard.

In fact the court made no findings at all, even though requested on record by Petitioner – the court affirmatively refused to provide any findings, stating "Not going to do that", see **Exhibit I** Line 13, line 13.

Even in the absence of findings from the court, the facts on record do not match any elements of a family offense or violations of existing orders of protection, or anything that would warrant a no-contact order – and again, Petitioner had shared custody for the pendency of the custody proceeding.

Petitioner had full parental rights, authority and privilege to meet with his child at the end of the school day, and violated no law or order in doing so.

In sum, the order of protection issued had no basis in fact or law to be issued.

As aforementioned, due process required the court to issue factual findings as to the grounds for issuance of the order of protection; the reason no findings were made by the court, was simply that no facts existed to support such an order.

Furthermore where there is no abuse or risk of harm, state and federal substantive due process rights and federal parenting rights prohibit interference of

a parent's contact and rights of association with his child, particularly where he has custody of his own child.

For these reasons, the Family Court order of protection should be vacated.

## VI. Federal claims of Injury

Petitioner respectfully submits, as per the evidence and argument provided in this petition, that the order of protection was illegally imposed by any legal due process standard, either procedurally or substantively.

Having shown above that the order's issuance was inconsistent with federal law, it is the substantive harm caused by the order that is most egregious.

The U.S. Supreme Court has held that the parent-child relationship is a fundamental core right, and a constitutionally protected liberty interest deserving strict scrutiny that is protected by the due process clause of the 14th Amendment, and a right that is not to be infringed upon by state action.

In *Troxel v. Granville* 530 U.S. 57, 65 (2000) the court held that:

> "The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." We have long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, "guarantees more than fair process." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). The Clause also includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." Id., at 720; see also *Reno v. Flores*, 507 U.S. 292, 301—302 (1993).
>
> The liberty interest at issue in this case – the interest of parents in the care, custody, and control of their children–is perhaps the oldest of the fundamental liberty interests recognized by this Court.

More than 75 years ago, in *Meyer v. Nebraska*, 262 U.S. 390, 399, 401 (1923), we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, in *Pierce v. Society of Sisters*, 268 U.S. 510, 534—535 (1925), we again held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control."

Also see *Southerland v. City of New York*, 652 F.3d 209, 221 (2d Cir. 2011) ("parents ... have a constitutionally protected liberty interest in the care, custody and management of their children.")

In *B.S. v. Somerset County*, 704 F.3d 250, 272 (3d Cir. 2013) the court found that:

> "The deprivation of a parent's custodial relationship with a child is among the most drastic actions that a state can take against an individual's liberty interest, with profound ramifications for the integrity of the family unit and for each member of it. From the parent's perspective, there may be little meaningful difference between instances in which the state removes a child and takes her into state custody and those in which the state shifts custody from one parent to another, as occurred here. In either case, the government has implicated a fundamental liberty interest of the parent who loses custody."

The order on petition herein directly violates Petitioner's core federal constitutional right to be a parent to his child.

The direct and ancillary effects of the order are onerous and constitutionally repugnant, impinging upon other core constitutional rights and privileges that should never be restricted without a good reason.

In this case, there is absolutely no reason – none provided by the court and none supported by any of the facts.

## Substantive Rights Violated

By the sheer existence of the order, irrespective of its illegally imposed pedigree, it effectively infringes upon or downright violates Petitioner's federal constitutional rights[7] –

Specifically:

1.  Right to parent and have familial association without interference by the state,

2.  Right of association with his child,

3.  Right to free speech in communicating with his child,

4.  Right to assembly in being with his child,

5.  Right to practice religion and direct the same with his child,

6.  Right of access to courts, violated in the form and way the order was issued preventing appellate review,

7.  Equal protection to have equal access to his child as anyone else,

8.  Right to travel, as it is currently curtailed and constrained by the order.

9.  Right to a higher standard of proof than a preponderance of evidence, before termination of parental rights, see below for further argument on this.

---

[7]It should be noted that the order of protection violates Petitioner's daughter's rights coincidently, however since she cannot petition the court or complain formally, this fact can only be a supportive point of notice to the court in regards to this petition.

The court's action preventing virtually all contact between a fit parent and his child, is unprecedented in controlling law, both federal and state, and offends the interests of justice.

For these reasons, the order of protection should be vacated, and the relief requested granted.

## The Order Effectively Imposes a Termination of Parental Rights

As aforementioned, the condition imposed by the order is tantamount to a termination of parental rights.[8]

Specifically, the order imposes an essentially complete ban upon normal contact and communications between a father and his child, imposing a wholly court created estrangement and separation between parent and child where no such "protection" is called for or even suggested by the facts.

Even if this order does not designate itself as a parental termination order in name or formal appellation, it effectuates one by every functional metric of what it means to be a parent to one's child.

In *Santosky v. Kramer*, 455, U.S. 745, 758 (1982), the U.S. Supreme Court ruled on a case coming out of Ulster County Family Court, holding that the NYS evidentiary standards then in effect for parental termination, a preponderance of evidence, were inconsistent with due process:

---

[8]Given the length of time this order is in effect and ambiguous conditions imposed to remain in effect in the future, the order threatens the entire parent-child relationship irreparably, potentially covering the child's entire life until the age of majority.

> "*Lassiter* [452 U. S. 18 (1981)] declared it "plain beyond the need for multiple citation" that a natural parent's "desire for and right to `the companionship, care, custody, and management of his or her children' " is an interest far more precious than any property right. 452 U. S., at 27, quoting *Stanley v. Illinois*, 405 U. S., at 651."

In this case, the termination of Petitioner's parenthood for all practical purposes – herein a constitutional violation in of itself – was accomplished through a series of orders of protection using indefinite criteria and duration, as well as a preponderance of evidence standard, rendering it unconstitutionally developed and issued.

## VII. Summation

As the Supreme Court has held, habeas relief should "cut through barriers of form and procedural mazes"[9], and whose power to correct illegal constraints upon a petitioner's liberty "is to a large extent uninhibited by traditional rules of finality and federalism"[10].

In the case at bar, an order of protection that is devoid of any legal or factual basis is in place that both denies and violates Petitioner's federal Constitutional rights.

These rights are core to his liberty and personhood, and criminalizes his ability to communicate, associate or be a parent to his child; if he would do so, he is threatened by the state with imprisonment and criminal prosecution.

---

[9]*Harris v. Nelson, 394 U. S. 286, 291 (1969)*

[10]*Hensley v. Municipal Court, 411 US 345, 350-351 (1973)*

For these reasons, Petitioner pleads that the court issue a writ of habeas

corpus and provide the following:

## Relief sought

1. **Vacate the order of protection;**

2. **Issue an order to provide for unsupervised, substantial and equal access of Petitioner to his child, or other equivalent relief,**
   As a matter of federal parenting rights, due process and equal protection;

3. **Declare the statute NY FCA Article 6, §154 unconstitutional,**
   Insofar that it provides no prior notice, standards or conduct as to what can trigger the issuance of orders of protection, and allows the imposition of such orders upon fit parents, or for any reason at all;

4. **Declare the state appellate court policy of denying the right of appeal for temporary orders of protection unconstitutional,**
   As such orders affect core constitutional rights, can cause irreparable harm without interlocutory opportunity for review, can run on for an indefinite amount of time with no avenue of effective review available, and are otherwise indistinguishable from final orders of protection or other orders of protection that are given a presumptive right to appeal.

**Dated: August 26, 2016**

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the above and foregoing is true and correct:

Respectfully Submitted:

Ben Gary Treistman
28 Garrison Road
Shady, NY 12409
(845) 679-0246