UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

Ben Gary Triestman,

OCT 04 2016

LAWRENCE K. BAERMAN, CLERK
ALBANY

          Petitioner,

-vs-

          Civil Case No. 1:16-CV-1079 (TJM/DEP)

Eric Schneiderman - Attorney General,
The State of New York,

          Respondent.

## OBJECTIONS TO MAGISTRATE REPORT AND RECOMMENDATION

## Table of Contents

OBJECTIONS TO
MAGISTRATE REPORT AND RECOMMENDATION............PAGE -1-

PRELIMINARY STATEMENT ...............................PAGE -1-

THE "IN-CUSTODY" ANALYSIS.............................PAGE -3-

RESTRAINTS ON PETITIONER'S LIBERTY NOT SHARED
BY THE PUBLIC GENERALLY ..............................PAGE -6-

THE STANDARDS FOR MEETING THE
"IN-CUSTODY" ELEMENT.................................PAGE -12-

THE ALLEGATIONS IN THE PETITION
SHOULD BE TAKEN AS TRUE .............................PAGE -15-

CONCLUSION.........................................PAGE -17-

# TABLE OF AUTHORITIES

## CASES

Anderson News LLC v. American Media Incorporated, 680 F.3d 162 (2012) . . . . . . . . . . 16, 17

Ashcroft v. Iqbal, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . 15

Barnum v. Clark, 927 F.2d 698 (2d Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Gilmore v. Greene County Dept of Social Services, Number 06-CV-0318, 2006 WL 1064181
  (NDNY Apr. 20, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

Henley v. Municipal Court, San Jose Milpitas Judicial District, Santa Clara County, State of
  California, 411 U.S. 345 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11, 12, 13, 14

Jones v. Cunningham, 371 U.S. 236 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Lehman v. Lycoming County County Children's Services Agency, 458 U.S. 502 (1982) . . . 5, 12

Moore-Beidl v. Beaudoin, 553 F. Supp. 404 (NDNY 1981) . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

Nowakowski v. the People of State of New York, Docket No. 14-1964 (2nd Cir. 2016) . . . . . . 13

Strait v. Laird, 406 U.S. 341 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

## STATUTES

18 U.S.C. §2265, §2266 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

NY Penal Law §215.50(3,6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

NY Penal Law §215.51(b,c,d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

NY Fam. Ct. Act §655, §656 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

Ben Gary Triestman,

                               Petitioner,         Civil Case No. 1:16-CV-1079 (TJM/DEP)

-vs-

Eric Schneiderman - Attorney General,
The State of New York,

                               Respondent.

---

## Objections to Magistrate Report and Recommendation

Petitioner hereby submits his objections to Hon. Peebles report and recommendation in the above case, dated September 20, 2016. The petition is incorporated by reference herein, as these objections are to be incorporated into the petition itself.

## Preliminary Statement

Petitioner does not seek to file a §1983 civil action for this claim, as Petitioner agrees with Hon. Peebles that such an avenue would be barred by abstention and immunity doctrines, and does not properly fit the elements of a civil rights violation as foreseen by 28 U.S.C. §1983.

Furthermore, Petitioner does not rely upon, complain about, or seek to overturn any custody decision per se in seeking the relief sought in this habeas

petition. Nor is Petitioner claiming habeas relief for other persons, such as A.T. his daughter.

Although the proceeding that generated the "in-custody" restraint complained about in this case stems collaterally from a civil custody trial, the subject restraining order is an instrument of the State, not of any litigant(s) in the custody case. It is an order independent of any custody determination.

The order of protection and its effects is severable as an "in-custody" restraint question of its own, and stands independently as a threshold question of the "in-custody" analysis, irrespective of the custody proceedings, the merits therein, or of the merits of this habeas petition, which have not yet been entertained.

It is in exclusive regard to the "in-custody" analysis, which is the only ground upon which Hon. Peebles based his recommendation for dismissal of the petition, that the effects, disabilities and liberty restraints stemming from the restraining order must be viewed, and as separate and distinct from any substantive issues relating to the custody proceedings, or of the substantive claims made in this habeas petition.

Since it is the sole reason for the recommendation for dismissal, the merits of the petition are not the subject of the Magistrate's recommendation, and likewise this is the sole subject of these objections to the Magistrate's Report-Recommendation.

## The "in-custody" Analysis

The issue in question is whether the constraints of liberty suffered by Petitioner meets or exceeds the threshold test of whether he is "in custody" by federal habeas corpus standards.

As there is no brightline rule or law under federal habeas law that establishes what is, or what isn't, considered "in custody", reliance must be made upon controlling or persuasive precedent case law, and upon the instant circumstances and facts informing of such determination.

Hon. Peebles cites three cases in support of his conclusion that Petitioner has not met the "in-custody" criterion in this case.

Specifically, the U.S. Supreme Court case in *Hensley v. Municipal Court, San Jose Milpitas Judicial District, Santa Clara County, State of California*, 411 U.S. 345 (1973), *Moore-Beidl v. Beaudoin*, 553 F. Supp. 404, 406-07, (NDNY 1981) and *Gilmore v. Greene County Dept of Social Services*, No. 06-CV-0318, 2006 WL 1064181 (NDNY Apr. 20, 2006).

Hon. Peebles did not address the eleven other cases Petitioner has cited in support and for comparison of what "in-custody" means as to the circumstances detailed in this petition

The liberty constraints imposed by the subject order of protection constitute an equal or greater than curtailment of liberty than those in controlling cases cited that found the "in-custody" criterion to be effective and applicable.[1]

## Case analysis

Both *Moore-Beidl* and *Gilmore*, supra, are fundamentally distinguishable from the instant petition.

In *Moore-Beidl,* the plaintiff/petitioner filed both a §1983 civil rights action concurrently with a habeas corpus petition; as aforementioned Petitioner here does not claim any civil rights action, and to that extent the findings in *Moore-Beidl* related to that do not apply.

However, more germane to the distinctions herein are the circumstances and legal theory that *Moore-Beidl* claimed in order to substantiate the "in-custody" prong of her petition.

Specifically, Moore-Beidl sought to overturn a family court neglect decision removing her son from her custody. She claimed that somehow both she and her son were in custody due to the Rensselaer Department of Social Services' placement of her son into foster care.

---

[1] Hon. Peebles also did not mention the parallel federal extensions of the order of protection, that were incorporated explicitly by said order, as it is pursuant to 18 U.S.C. §2265, §2266, making this issue directly a federal question by statute as well.

Page -4-

The court ruled that she did not have proper standing to claim habeas relief for her son, and furthermore ruled that Moore-Beidl herself was not "in custody", since:

> "She alleges no restraints upon her person other than the fact that she is forceably being prevented from being together with her youngest son, Joseph. She is otherwise unrestricted by the County Department of Social Services, hence the habeas petition is hereby dismissed with respect to the plaintiff, Mary Carol.", see *Id* at 407.

The petitioner in *Gilmore v. Greene County* similarly attempted to overturn a family court termination of parental rights due to permanent neglect, claiming "in-custody" status solely due to the family court's termination of custody. The court ruled that the petitioner was not "being held in custody pursuant to any such determination by the family court."

In both those cases, no mention or claims of restraint due to an order of protection is mentioned, claimed or considered – rather the petitioners' premise of the in-custody element is solely premised upon the termination of custody of the child, and the seeking to overturn the family court custody determinations. The petitioners make no claims as to their physical freedoms being restrained.

In actuality, these petitioners make claims similar to those made *in Lehman v. Lycoming County County Children's Services Agency*, 458 U.S. 502 (1982).

Page -5-

Much as in those two cases, the Supreme Court held that losing custody of a child cannot be grounds to claim "in-custody" for habeas corpus purposes, and that, similarly:

> "The "custody" of foster or adoptive parents over a child is not the type of custody that traditionally has been challenged through federal habeas. Ms. Lehman simply seeks to relitigate, through federal habeas, not any liberty interest of her sons, but the interest in her own parental rights."

By contrast, Petitioner herein makes no claims or reference as to disturbing any custody determinations or decision, nor a claim for habeas relief for the child. Neither has Petitioner premised any custody determinations as a basis for the an "in-custody" status.

Instead, Petitioner has demonstrated federal habeas corpus "in-custody" status directly stemming from the open-ended and consequent constraints that the subject order of protection actually and physically imposes.

### Restraints on Petitioner's Liberty not Shared by the Public Generally

The order's terms and direct consequences are not merely confined to restrictions of "only petitioner's access to his child", as Hon. Peebles characterizes it, see page 7 of Mag. R&R.

Furthermore Hon. Peebles dismisses any liberty constraints suffered by Petitioner in consequence to the order as merely speculative, see Mag. R&R at page 7:

Page -6-

> "His contention that he may inadvertently come into contact with his child and, therefore, subject himself to potential incarceration is entirely too speculative to support a finding that he is currently in custody."

Such characterization erroneously implies that the restrictions and accompanying potential criminal penalties imposed by the order are operative only if Petitioner affirmatively seeks out access to his child, and are moot in all other circumstances.

This is simply not true, and not how the protective order works by law and in practice, see NY Penal Law §215.50(3,6), and §215.51(b,c,d), et.seq., NY Fam. Ct. Act. §655, §656, and the subject order(s) at Exhibit A of the petition

By merely being in the proximity of his daughter, intentionally or not, inadvertently or not, irrelevant of what physical location it occurs, Petitioner is subject to immediate arrest and detention, irrespective of otherwise innocent behavior, knowledge of the situation or later adjudications exonerating him.

As detailed in the statement of facts in the petition, Petitioner lives only four miles away from his child, and they both live and partake in the same small community of Woodstock, NY, and the nearby surrounding places and establishments.

The law regarding protective orders in NYS actively applies to any proximity of Petitioner to his child, whether his child is at her home, as Hon. Peebles solely

characterizes it, or whether the child is at large in the community, alone or accompanied by her mother or other custodian.

The simple fact is, that if the Petitioner is at some location, and the child comes to the same location, Petitioner is compelled by law and under threat of criminal prosecution to immediately vacate the premises.

If the child is already in some location in the community, unbeknownst to Petitioner, and Petitioner has prior business there, a scheduled appointment or simply ad hoc need to go to that location, he is again inadvertently exposed to the same risk of contact and criminal prosecution, and must immediately vacate the premises; if he does not see her and thus did not leave, he is presumptively breaking the law and can be arrested on the spot.

If Petitioner has a dinner date with someone, and the child enters the same restaurant, Petitioner must abandon the companion immediately and leave the restaurant, not even having the opportunity to pay for the meal, or time to explain why he must leave.

If Petitioner has made reservations at a local restaurant or has purchased tickets to a local event, he must similarly abandon his plans for the day

This compelled behavior by law is in itself a constraint upon his liberty and associations – however, additionally the very necessity of having to explain to his social companions why he cannot remain in a public location to enjoy simple

Page -8-

interpersonal interchanges, is a blight upon his social existence and reputation, and puts him into a questionable state of disrepute and suspicion.

If Petitioner has a service call to attend at a customer's business location, and the child enters the store, Petitioner must cease his work, abandon his post, drop all his tools, and immediately leave the customer's location, again without time for explanation, compromising his livelihood and business reputation as a reliable service technician, and again raising questions as to his otherwise inexplicable behavior. Even with such explanation given enough time, his reputation as a non-criminal, non-dangerous and trustworthy individual is put into question.

Similarly, the order effectively compromises/constrains Petitioner from working in a convenience store as a cashier, tending a luncheonette counter, or manning the local farmer's market kiosk, where his brother sells farm goods.

The order seriously and exigently impinges upon having any stable job dealing with the public in his community.

Public swimming areas, fireworks shows, the local open-air Shakespearian plays, local flea markets, and other outdoor events are similarly potentially barred, ad hoc terminable or simply legally dangerous to go to, as are banks, libraries, our church and synagogue, and municipal buildings.

If Petitioner is shopping for groceries, with a full cart, perhaps ready or in the middle of checkout, if the child comes into the market, Petitioner must leave all his groceries where they are and exit the market.

Petitioner is barred from proximity to the school that his daughter goes to, and has had to resign his board position as Chair of the special PTA, and all involvement in school activities.

Even Petitioner's running (campaigning) for or holding public office that deals with the public is compromised.[2]

This is the classic circumstance and condition that is anticipated and described in precedent case law regarding constraints of liberty, and the ability to come and go as he pleases, subject to constraints upon his liberty not suffered by the general public.

None of these things are "speculative", or notional, as Hon. Peebles has cast. These are everyday conditions that Petitioner must deal with and suffer through continually whenever he leaves his home, due to the presence and demands of the subject court order.

The obligation to avoid locations that change unpredictably with no notice, at all times are the consequence of the order of protection. He cannot come and go as

---

[2]Petitioner was on the ballot for the office of Woodstock Town Justice last year, and plans on running again for that office.

he pleases, his freedom of movement rests in the hands of state officers, who may arrest him without a moment's notice. Disobedience is itself a criminal offense. "The restraint on his liberty is surely no less severe than the conditions imposed on the unattached reserve officer whom we held to be "in custody" in *Strait v. Laird*, supra." (See *Hensley* at 351)

There have been several incidents where such contact was made, either where Petitioner was restrained from entering some public area or establishment, or where Petitioner was already there and Petitioner had to drop everything to leave immediately; in all these cases Petitioner was fortunate not be arrested, yet the very real probability was there, and continues unabated.

Neither are the circumstances of his PTA board resignation and adjunct student activities, and the bar to his proximity to the school speculative, but are more concrete examples of his constraints of liberty.

Whether these liberty, association, and travel disabilities can be alleviated by admonitions, advice or adherence of "just don't go there", or "just don't do that job", or "just don't stay in the restaurant you had reservations for" or "throw away tickets you had paid for, abandon companions that accompany you to these events and social meetings", or "you just have to explain why you have to leave immediately, and why there is an order of protection for you against your own daughter", do not address the point being made here.

Page -11-

These admonishments only prove the threshold point here, that Petitioner's movements in his community are restrained by law, and are harsher than the "in-custody" determination made in numerous other cases.

The threshold question here is not whether Petitioner is deserving of such treatment, or whether these constraints upon his liberty have been earned by prior bad conduct.

Rather the question is confined to whether such liberty constraints meet the "in-custody" threshold requirement or not.

Whether Petitioner's constraints and curtailment of his liberty are deserving, is a question of the merits of the petition, which have not yet been entertained.

### The standards for meeting the "in-custody" element.

There is a long line of Supreme Court and 2nd Circuit court cases dealing with the question of whether a petitioner is "in-custody" for habeas corpus jurisdiction purposes, see *Lehman v. Lycoming County Children's Services Agency*, 458 U.S. 502, 519 (1982):

> "The Court's more recent precedents have firmly established § 2254's "in custody" requirement as its most flexible element, stressing that the test of "custody" is not present physical restraint, but whether "there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English speaking world to support the issuance of habeas corpus." *Jones v. Cunningham,* 371 U. S., at 240."

And at 522:

> "This Court has found the statutory concept of "custody" broad enough to confer jurisdiction on federal courts to hear and determine habeas applications from petitioners who have freely traveled across state borders while released on their own recognizance, *Hensley v. Municipal Court*, supra, and who are on unattached, inactive Army Reserve duty, *Strait v. Laird*, 406 U.S. 341 (1972)."

In *Maleng v. Cook*, 490 US 488 (1989), the Supreme Court stated:

> In *Jones v. Cunningham*, 371 U. S. 236 (1963), for example, we held that a prisoner who had been placed on parole was still "in custody" under his unexpired sentence. We reasoned that the petitioner's release from physical confinement under the sentence in question was not unconditional; instead, it was explicitly conditioned on his reporting regularly to his parole officer, remaining in a particular community, residence, and job, and refraining from certain activities. Id., at 242; see also *Hensley v. Municipal Court, San Jose-Milpitas Judicial Dist., Santa Clara County*, 411 U. S. 345 (1973); *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U. S. 484 (1973).

And as the 2nd Circuit Court of Appeals has clarified recently in *Nowakowski v. The People of State of New York*, Docket No. 14-1964 (2nd Cir. 2016):

> "The custody inquiry therefore "requires a court to judge the `severity' of an actual or potential restraint on liberty." *Poodry [v. Tonawanda Band of Seneca Indians]*, 85 F.3d at 894. Though the language of habeas cases often refers to "severe restraints on individual liberty" or "cases of special urgency," *Hensley*, 411 U.S. at 351, these terms describe the nature, rather than the duration, of the restraint. It is evident that a single day of incarceration would be sufficient custody for jurisdiction if the petitioner filed while subject to such a sentence. **Similarly, courts have considered even restraints on liberty that might appear short in duration or less burdensome than probation or supervised release severe enough because they required petitioners to appear in certain places at certain times, thus preventing them from exercising the free movement and autonomy available to the unrestricted public, or exposed them to future adverse consequences on discretion of the supervising court.** See *id.* (custody satisfied where petitioner was

required to appear in court when ordered and subject to revocation of release); *Barry*, 128 F.3d at 161 (**despite flexibility in scheduling, requirements "to be in a certain place—or in one of several places—to attend meetings or to perform services" are clearly "restraints on [petitioner's] liberty not shared by the public generally"**); *Dow*, 995 F.2d at 923 (mandatory class attendance and "physical presence at a particular place" constituted custody, despite lasting only fourteen hours over three days); *Sammons*, 785 F.2d at 1345 (potential of revocation of suspended sentence or other adverse action during term sufficient for custody)." *Emphasis added.*

As controlling case law shows, the standard is met when the person is "subject to restraints not shared by the public generally", *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973) (also quoting Jones v. Cunningham, 371 U.S. 236, 240 (1963)).

As detailed above, there are numerous restraints upon Petitioner not shared by the public generally; simply put, Petitioner can be arrested on the spot for things that every member of the public could not be, simply incidentally being in proximity of his daughter in public, no matter where that may be.

The order in its effectuation is not simply a prohibition to Petitioner in not seeking out his daughter for contact, but rather a constraint of being forced to avoid a moving target, whose whereabouts are ad hoc and unpredictable throughout the same community, because his daughter is an active member of the same small community he lives in, and whose residence is only 4 miles away from his.

These circumstances and conditions are significantly harsher than a person being on probation, parole, supervised release, on indictment but released on recognizance, mandatory classes or part-time community service – all of which have been found to be "in-custody" for habeas corpus purposes.

### The Allegations in the Petition Should Be Taken as True

Much as in any civil action, the allegations of the petition must be taken as true.

This pleading's allegations, made here under affirmation, should be taken as true, by the same standards set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and FRCP 8.

Iqbal made plain that the Twombly analysis applies "in all civil actions and proceedings in the United States district courts." The court must accept as true all well-pleaded factual allegations in the complaint and a complaint that states a plausible claim for relief should survive a motion to dismiss. When the complaint contains well-pleaded facts, the "court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

The petition clearly pleads the facts that provide for more than simple speculation of the significant liberty constraints imposed upon the Petitioner by

Page -15-

the State, as well as the criminal consequences for violations of those constraints, see page 2 to 4 of the petition.

Hon. Peebles says that the facts of the pleadings are too speculative, effectively saying that the petition should be dismissed for failure to state a claim – in this case specifically the "in-custody" element.

The petition is well pleaded, and details the facts that exceed mere plausibility of the "in custody" liberty constraints imposed, sufficient enough to overcome a finding of being "entirely too speculative" in the factual allegations.

The degree of speculation – or more rigorously, the degree of plausibility – should not be a controlling factor in deciding to dismiss a civil action.

The Second Circuit, in *Anderson News LLC v. American Media Inc.*, 680 F.3d 162 (2012), admonished that dismissals for failure to state a claim must be decided based on whether a plaintiff's complaint is plausible rather than how plausible it is, and declared improper the district court's denial of leave to file a proposed amended complaint and vacated the dismissal, @ 189 - 190:

> When the district court ruled that Anderson did not state a plausible §1 claim. . . the plausibility inquiry was misdirected. The question at the pleading stage is not whether there is a plausible alternative to the plaintiff's theory; the question is whether there are sufficient factual allegations to make the complaint's claim plausible. As discussed in Part II.A. above, the plausibility standard is lower than a probability standard, . . . although an innocuous interpretation of the defendants' conduct may be plausible, that does not mean that the plaintiff's allegation that that conduct was culpable is not also plausible.

Page -16-

Although Petitioner respectfully asserts that the factual assertions in the petition are easily sufficient to overcome implausibility, if the specificity of the facts pleaded in this petition are insufficient, then opportunity should be permitted to amend, not an outright dismissal, see *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991) "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."

Also see *Anderson News* at 185, "When a party requests leave to amend its complaint, permission generally should be freely granted."

## Conclusion

It is uncontroverted that Petitioner is under actual, exigent and continual threat of criminal prosecution and imprisonment if he violates the state imposed mandates upon his freedoms to freely come and go as he pleases within his community.

Notwithstanding Hon. Peebles' dicta stating this threat as "speculative", Petitioner should not have to wait until he is actually arrested and incarcerated on this, in order to reach the merits of this petition.

The constraints upon his liberties imposed by the order of protection, reach and exceed the standards that have been held to be "in-custody" by the US

Supreme Court and the 2nd Circuit Court of Appeals for habeas corpus purposes. And as detailed above, these restraints are clearly not shared by the public generally.

The order of protection is in fact more operative as a sword that imposes upon Petitioner than it is a shield purporting to protect, despite the moniker of the order and Hon. Peebles' characterization.

Finally, the analysis and question herein is not whether Petitioner is deserving of such preemptive criminality or not. The question is only whether such conditions reach the effective level of being "in custody" for these habeas corpus purposes.

Petitioner respectfully asserts that it does.

**Dated: October 3, 2016**

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the above and foregoing is true and correct:

Respectfully Submitted:

Ben Gary Treistman
28 Garrison Road
Shady, NY 12409
(845) 679-0246